UNITED STATES *v.* JAMES LOUDON & CO. FOR MR. ROYCE (No. 3854)[1]

United States Court of Customs and Patent Appeals, February 25, 1935

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *Daniel I. Auster*, special attorneys, of counsel), for the United States.

*Lawrence A. Harper* (*Abraham Gottfried* of counsel) for appellee.

[Oral argument February 6, 1935, by Mr. Folks; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain artificial flowers were imported at the port of Los Angeles under the Tariff Act of 1930. These were classified for duty under a provision of paragraph 1518 at 90 per centum ad valorem, and were claimed in the protest to be dutiable under a second provision of said paragraph at 60 per centum ad valorem. The material portion of said paragraph is as follows:

PAR. 1518. * * * artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof, when composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem; when composed wholly or in chief value of other materials and not specially provided for, 60 per centum ad valorem; * * *.

On the trial in the lower court, samples of the imported merchandise were introduced and submitted to an analyst, and these, with the report of the analyst, constitutes all the evidence in the case. It appears from the said analysis that cotton is of chief value, the artificial flowers being composed of dyed cotton cloth, dyed cotton yarn, fine iron wire and coarse iron wire.

The court below sustained the protest and the Government has appealed.

The only question submitted here is whether the imported goods should have been classified under said paragraph 1518 as composed wholly or in chief value of yarns, threads, filaments, tinsel wire, or otherwise, as provided by the 90 per centum provision of said paragraph, or whether they should have been classified as composed wholly or in chief value of other materials, and not specially provided for. The trial court was of opinion, "as an original proposition", that

artificial flowers made from textile materials were not made from yarns, threads, filaments, etc., but decided the case largely upon the theory that the Congress, by adding the words to the paragraph, "rayon or other synthetic textile", intended to exclude from this provision artificial flowers, and the like, made from textiles or woven fabrics other than those made from rayon.

On the other hand, the Government contends that on the strength of the holding of this court in *Kayser & Co. (Inc.) v. United States*, 13. Ct. Cust. Appls. 474, T. D. 41367, *Blumenthal & Co. v. United States*, 14 Ct. Cust. Appls. 17, T. D. 41531, and *Robinson-Goodman Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 149, T. D. 43473, artificial flowers made from fabrics are made from threads, filaments, etc., and that the words "or rayon or other synthetic textile" were to be considered as words of inclusion only. Considerable argument on both sides arises over the applicability of the doctrine of *expressio unius est exclusio alterius*.

In *Kayser & Co. (Inc.) v. United States, supra,* cotton fabric gloves, bearing embroidery ornamentation on the backs of the same, were classified under paragraph 1430 of the Tariff Act of 1922, the predecessor paragraph of said paragraph 1518. The contention was made that these gloves could not be classified under the embroidery provision of said paragraph 1430 because the embroidery was placed upon fabric and not upon threads, yarns, or filaments; in other words, that the articles involved were gloves, and should be classified as such. We held to the contrary, stating, in part:

> The statute unmistakably refers to the basic material of which the embroidered article is composed. The gloves are made of cotton cloth; nevertheless it may be said with entire truth that they are composed of cotton yarns, threads, and filaments. Certainly the yarns, threads, and filaments have been processed by weaving; * * *.

We repeated that holding, in substance, in *Robinson-Goodman Co. (Inc.) v. United States, supra,* and the question was not involved in the *Blumenthal* case, *supra.* While in the last cited case there may seem to be a conflict of decision, such conflict, if any exists, does not extend to the point here involved.

There is no essential difference between the phraseology of said paragraph 1430 in this respect, and the present paragraph 1518, except the addition of the words in the latter, "rayon or other synthetic textile."

For the first time, in the Tariff Act of 1930, provision was made in the various dutiable schedules covering the new commercial material known as rayon. In paragraph 1313 of said act of 1930, the following definition was given:

> PAR. 1313. Whenever used in this Act the terms "rayon" and "other synthetic textile" mean the product made by any artificial process from cellulose, a.

cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, which product is solidified into filaments, fibers, bands, strips, or sheets, whether such products are known as rayon, staple fiber, visca, or cellophane, or as artificial, imitation, or synthetic silk, wool, horsehair, or straw, or by any other name whatsoever.

Here, it will be observed, the Congress went beyond the ordinary definition of a textile, and provided for a product which might be in strips or sheets. This doubtless was to comprehend all forms of this product which might be used to make or simulate textiles.

No authorities have been called to our attention which indicate that the doctrine of *expressio unius est exclusio alterius* should here apply. The ordinary reading of the language of said paragraph 1518 leads to the conclusion that the added words "rayon or other synthetic textile" are words of extension and not words of limitation. No legislative history or other matter has been called to our attention which leads to any other construction of the language. The ordinary meaning of the language used should, therefore, control.

The judgment of the United States Customs Court is *reversed.*